U.S. v. Slizewski. Did you hear? That's correct. If it pleases the court, my name is David Geyer and I represent the appellant, Lance Slizewski, in this matter. Before I go any further, there was a mistake from my office. I would like to reserve three minutes for rebuttal, if it's possible. They told me I just should talk to you and they'd do it. The issue before the court that we're raising is whether or not Lance Slizewski made a sufficient showing to entitle him to a Franks hearing. And we believe that it does. Initially, I will also say that the burden is on Mr. Slizewski and that burden is fairly substantial, namely that he has to indicate that there are deliberately false statements or the statements in the affidavit were made with reckless disregard and that the statements are challenging, the omissions were essential to the judge's finding of probable cause. And we contend that the affidavit did contain materially inaccurate information. Unlike a lot of cases, this matter was thoroughly investigated by the Madison Police Department on another case. And that was the case where Mr. Sexton was ultimately charged. Many of the reports were written in May of 2014. Mr. Slizewski was arrested in July of 2014. Oftentimes, a police officer is needed or is required to make decisions based upon the circumstances. And oftentimes, those circumstances are timing. For example, oftentimes a police officer can go into a house on exigent circumstances. Oftentimes, a police officer, if a car may be removed, or there may be destruction of evidence, can use lesser information in providing statements in an affidavit. In this case, we contend, or I contend that the standard should be extended as to what would constitute the duty of care of an officer in making accurate statements. Again, in this case, there was a substantial amount of police reports that were generated in May, many of which were attached and referred to in Officer Peterson's affidavit. Mr. Slizewski was arrested, placed on a probation hold in July of 2014. Actually, it was July 9th of 2014. The car was impounded by the Madison Police Department on July 11th of 2014. The affidavit was sought on July 16th of 2014. So there's a period of five days in which the police officers had the car. The circuit court made a reference specifically to the items in the back of the car, namely gray and white tennis shoes and a baseball cap, that would have provided probable cause. However, we contend that that's an inaccurate statement by the officer, in that in the police reports, Mr. Hatchet, who was one of the persons who identified Mr. Sexton in two robberies, on a photo still, identified gray Air Jordans. A police officer, not Officer Peterson, took that statement and had the opportunity to review them themselves, and in the interim, from the time of the arrest of Mr. Slizewski or when Mr. Slizewski became a suspect, Officer Peterson could have reviewed those stills, and the stills would have shown that they were gray Jordans or that they were gray and white shoes. The circuit court indicated that the witness, namely Mr. Hatchet, may have been wrong in his identification. Our argument is that the government had the ability to look at those shoes, look at the stills, to compare them. Again, this is not the type of case where an officer is under the gun to provide the information, where he doesn't have an opportunity to go back and look at matters, but rather that, in this case, the officer had the ability to review items at what you want to call his leisure or that he had a substantial period of time to take a look at items. So when he made the statement to the magistrate through the affidavit, it wouldn't have been things like similar to or they look like or those type of terms, but rather these were the shoes or they weren't the shoes. In particular, since the circuit court determined, in adopting the magistrate's recommendation, that the hat in the car as well as the shoes gave probable cause. Again, this is not the situation where the officer doesn't have an ability to take a look at matters, but rather that he could have done this. It's similar to the car. Again, he indicated in the affidavit that there was a car that had driven past players in Madison and that the car looked similar to the type of car that Mr. Slizewski had. Yeah, but both of the cars that we're talking about were black and both were four-door Chevy sedans. So it was just an issue of what make it was, an Impala versus a Malibu. And similarly, like the basketball shoes, it was the issue of brands, Jordans versus LeBron. Weren't these just little minor trivial differences? Normally they would be, but where the officer has the ability to, in fact, find out exactly, rather than things similar. Again, oftentimes an officer is under the gun, evidence can be destroyed, evidence can be lost. Mr. Slizewski was placed on a probation hold. He was in jail. The car wasn't going to go anywhere. The evidence wasn't going to go anywhere. The officer looked into the car. He saw the shoes. The officer also had, already in evidence, the still from the robbery, which would have identified exactly what those shoes were. So again, because of the temporal difference, there should be, at least we argue, there should be a higher standard on an officer when it comes to probable cause looking under the totality of the circumstances. There were other circumstances, too. What about that conversation with the girlfriend at the jail where he repeatedly told her to find where his car is, get it back, and get the stuff out of it before his life is over? That contributed to the probable cause. I understand that, Your Honor. Those things I'm not arguing. I've indicated there are a substantial amount of things that are argued in there or placed in there that are not to be argued. Again, that's subject to interpretation, and I understand that the officer is not to look for innocent interpretation, so that's subject to the interpretation. But again, where it comes down to what actually is the probable cause, I mean the same thing could be said when he's in the jail and he indicates that my life is over to his girlfriend. That could mean he's on a probation hold, he could look at a substantial amount of time in jail, or it could mean that they've got me, I've got a gun in the car. But again, he doesn't indicate to the girlfriend at all that there is a gun in the car and they get the gun out. And with respect to the comment regarding the car, again, they photographed Mr. Slaizewski's car. And when you match that up to the car from the players, you can distinctly see that it's not the same car. Again, the affidavit makes reference to it is similar to that car. But again, the officer had the time, he had the evidence already. I'm not saying the officer even had to go look for evidence. He had the evidence already throughout the other investigation of Mr. Sexton to find that the car wasn't similar, but they in fact were different cars. Same thing could have been done with the shoes. As I said, the circuit court determined that the baseball cap and the shoes weren't sufficient to find probable cause. Again, I think Judge Peterson indicated that it wouldn't have mattered if it was a white Grand Torino. It would have been the same finding. So if the shoes are an important factor, they have a still, they can match the shoes up to allow them to say that it looks similar to or that these were gray Jordans, these were gray and white shoes, and that maybe the witness was wrong. Well, again, it's easy to show whether the witness was wrong or not because it really doesn't matter what the witness said because they had the evidence there. Thank you very much. Thanks, Counselor. Good morning, Your Honors. May it please the court, Rita Rumbleau for the United States. I represented the government below. As Judge Williams just pointed out, there's so much more to this case than just the St. Louis Cardinals baseball hat and the gray shoes. Let's go through it. Mr. Slazewski showed up at his probation hearing on July 9th, 2014, and if they asked if he drove to the meeting, he lied and said no. But he did drive to the meeting. They found his black Impala there. And as Judge Williams just noted, then when they take him into custody, he repeatedly calls his friend Lisa Brown to find his car and get his stuff out of it, and his life is over. But there's even more than that. The district court noted in its findings that, again, the district court just did not rely just on the presence of this baseball hat and the gray shoes and the car. Also, after Sexton was arrested in May, he was calling Slazewski's phone number. Didn't call him Lance, didn't call him Slazewski. He called him Uncle Cletus or something. But still, it was like he was telling him to get his phone wiped out, to get his phone reset. So you've got so many different things. Plus at the Wingstop robbery, a citizen witness says, hey, they drove away in a black four-door sedan similar to a Malibu. Again, the law enforcement officers correctly told the issuing judge what eyewitnesses said. They didn't try to hide what the eyewitnesses said. So the eyewitness said a Malibu. Well, does that mean absolutely it wasn't Slazewski's car, which was an Impala? No. Again, it's inferences. This is probable cause. This is totality of the circumstances. When you put it all together, I mean, there was a selfie of James Sexton on his phone with a St. Louis Cardinals hat, and he was at the Wingstop restaurant that day before the robbery. So you've got that, the gray shoes. Again, could Hatchet have been wrong that they were Jordan's versus LeBron's? Again, when there's too many coincidences, they add up to probable cause. I mean, the threshold isn't that high. And when you have Slazewski lying about having driven his car to the meeting, when you have him totally freaked out about the police officers getting hold of his car and finding what's in it, and then claiming that his life is over, as this court is well aware. He is an armed criminal and did receive a mandatory minimum 15-year term of imprisonment. When you look at the affidavit as a whole, this whole reference to the car being similar to the car depicted in the video of the players' robbery, the government conceded below at district court level, take that out of the affidavit. It was not material at all to the finding of probable cause. Not at all. And the district court was correct in finding that based on the totality of the circumstances here with everything we have, it wouldn't have mattered if Slazewski's car had been a white Torino that day. So many of the things that Slazewski complains about on appeal are just not material to the finding of probable cause. And that's why the district court did not clearly err when it denied his motion for Frank's hearing. Unless the court has any further questions, I ask that you affirm the judgment and conviction. Thank you. Thank you, counsel. Just a few remarks. Again, as I indicated earlier, there are other things in the affidavit that are not in dispute. But, again, what I'd like to point out is the time difference here in the sense that Mr. Sexton was arrested in May. Mr. Slazewski's arrested in July. And there's no indication as to when these phone conversations with Uncle Cletus took place, whether they were in May, June, July. They just say that they indicated that they looked at their or they took down phone calls from the Dane County Jail. Again, the standard is fairly low. I'm not going to argue that. But under the circumstances, as time comes into play, then it should raise a standard as to what an officer should do. As Ms. Rumble indicated, there's inferences. But if an officer has an ability to take away some of those inferences and take away by actual proof, then it would be, you know, then come down to the fact that, no, White Grand Torino wouldn't have been the car that would have been driven that day. It would have been the car that he had. Again, that's all. Thank you. Thank you. Thanks to both counsel. The case will be taken under advisement.